UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| MEGAN D. ERASMUS,<br><br>            Plaintiff,<br><br>     v.<br><br>CHARLES W. PERRY, M.D., INC, a California Professional Corporation, dba Chrysalis Cosmetics,<br><br>            Defendant. | No. 2:21-cv-00915-WBS-KJN<br><br>MEMORANDUM AND ORDER RE: MOTION TO DISMISS |

----oo0oo----

Plaintiff Megan D. Erasmus ("plaintiff") brought this action against Charles W. Perry, M.D., Inc. ("defendant") seeking injunctive relief, damages, and a declaratory judgment against defendant for violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et. seq., and violation of the Unruh Civil Rights Act, Cal. Civ. Code § 51-53.  Defendant now moves to dismiss plaintiff's complaint in its entirety.  (See Mot. to Dismiss at 2 (Docket No. 6).)

1

I.   Factual and Procedural Background

Plaintiff is a California resident who is completely deaf and therefore relies entirely on closed captioning to understand video content. (Compl. at ¶ 1 (Docket No. 1).) Defendant is a professional corporation that operates Chrysalis Cosmetics, a cosmetic clinic located in Sacramento County. (Id. at ¶¶ 2-3.) In connection with its brick-and-mortar business, defendant operates a website at https://www.sacramentoplastics.com. (Id. at ¶¶ 4-5, 12.) Among other things, the website features patient testimonial videos to provide information about the clinic's services and to influence prospective customers to use them. (Id. at ¶¶ 13, 18.)

In May 2021, plaintiff, who alleges she was a prospective customer of the clinic, visited defendant's website seeking information about the clinic and the scope of the services it offers. (Id. at ¶¶ 14-16.) Plaintiff alleges that when attempting to view patient testimonial videos on the website, she found that the videos lacked closed captioning, rendering her unable to fully understand their content. (Id. at ¶¶ 17-18.)

Plaintiff alleges that the website's failure to include closed captioning for its videos violates established standards for making digital content accessible to hearing-impaired individuals. (Id. at ¶ 28.) Plaintiff further alleges that the videos' lack of closed captioning, and her consequent inability to understand their content, caused her difficulty and discomfort and deterred her from further use of the website and from availing herself of defendant's services. (Id. at ¶¶ 18, 23-25.)

2

1 Plaintiff says that she intends to return to the website to avail
2 herself of defendant's services once defendant has made its
3 website accessible to hearing-impaired individuals like her.
4 (Id. at ¶ 26.)

5 II.  Request for Judicial Notice

6      Federal Rule of Evidence 201 permits a court to notice
7 a fact if it is "not subject to reasonable dispute."  Fed. R.
8 Evid. 201(b).  A fact is "not subject to reasonable dispute" if
9 it is "generally known," or "can be accurately and readily
10 determined from sources whose accuracy cannot reasonably be
11 questioned."  Id.

12      In its request for judicial notice in support of its
13 motion to dismiss, defendant requests that the court take
14 judicial notice of: (1) a list of lawsuits filed by plaintiff in
15 state and federal courts in California since January 1, 2019;
16 (2) five complaints filed by plaintiff in the Eastern District of
17 California in May and June of 2021; and (3) an image of a webpage
18 on defendant's website containing an "Accessibility Statement."
19 (See Req. for Jud. Notice at 2-4 (Docket No. 6-2).)

20      The court declines to take judicial notice of any of
21 the materials submitted by defendant referencing plaintiff's
22 litigation history.  The court does not find plaintiff's
23 litigation history relevant to issues to be determined on this
24 motion; she has already informed the court that she is an ADA
25 "tester," (Compl. at ¶ 26 (Docket No. 1); Opp'n to Mot. to
26 Dismiss at 1 (Docket No. 9)), or someone who evaluates and
27 documents the accessibility of public accommodations to ensure
28 that they comply with the ADA, and her litigation history is not

helpful in deciding any of the issues before the court.[1]

With regard to defendant's final request for judicial notice, although the image of the "Accessibility Statement" webpage is undated, plaintiff does not take issue with its authenticity or application to this case. Accordingly, because plaintiff does not object, the court will take judicial notice of the "Accessibility Statement" on defendant's website.

III. Discussion

Defendant argues that the complaint must be dismissed for lack of standing pursuant to Federal Rule of Civil Procedure 12(b)(1). (See Mot. to Dismiss at 7 (Docket No. 6.) Defendant also argues that the complaint should be dismissed for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (See id. at 3-6.) The court will address each argument in turn.

A. Motion to Dismiss under Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction. See

---

[1] Moreover, as the Ninth Circuit has opined:

> The attempted use of past litigation to prevent a litigant from pursuing a valid claim in federal court warrants our most careful scrutiny. This is particularly true in the ADA context where . . . . most . . . suits are brought by a small number of private plaintiffs who view themselves as champions of the disabled. For the ADA to yield its promise of equal access for the disabled, it may indeed be necessary and desirable for committed individuals to bring serial litigation advancing the time when public accommodations will be compliant with the ADA.

D'Lil v. Best W. Encina Lodge & Suites, 538 F.3d 1031, 1040 (9th Cir. 2008) (citations and internal punctuation omitted).

4

Fed. R. Civ. P. 12(b)(1). To have standing to sue in federal court, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robbins, 136 S. Ct. 1540, 1547 (2016) (citations omitted).

To establish injury in fact, "a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." Id. (internal quotations and citations omitted). "In the context of injunctive relief, [a plaintiff] must additionally demonstrate 'a sufficient likelihood that he will again be wronged in a similar way.'" Fortyune v. Am. Multi-Cinema, Inc., 364 F.3d 1075, 1081 (9th Cir. 2004) (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983)).

The party invoking federal jurisdiction must establish each element with the manner and degree of evidence required at the successive stages of the litigation. Carrico v. City & Cnty. of San Francisco, 656 F.3d 1002, 1006 (9th Cir. 2011). Accordingly, at the motion to dismiss stage, the court bases its analysis on plaintiff's complaint, which the court accepts as true. See id.

"The existence of federal standing often turns on the nature and source of the claim asserted. Accordingly, [the] standing analysis must focus on the nature and source of [a plaintiff's] claim—discrimination as defined by the ADA." Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 947 (9th

1 | Cir. 2011) (internal quotations and citations omitted).
2 |      In the ADA context, "it is the access barriers that the
3 | . . . plaintiff actually encountered or about which he had
4 | personal knowledge that 'confer' standing on him under Article
5 | III." Doran v. 7-Eleven, Inc., 524 F.3d 1034, 1042 n.5 (9th Cir.
6 | 2008). "Once a disabled individual has encountered or become
7 | aware of alleged ADA violations that deter his patronage of or
8 | otherwise interfere with his access to a place of public
9 | accommodation, he has already suffered an injury in fact
10 | traceable to the defendant's conduct and capable of being
11 | redressed by the courts, and so he possesses standing under
12 | Article III to bring his claim for injunctive relief forward."
13 | Id.
14 |      In her complaint, plaintiff alleges that defendant
15 | operates a clinic, that she was "a prospective customer" seeking
16 | out defendant's "services," and that she visited defendant's
17 | website to seek "information about the clinic and the scope of
18 | its services" and thereby determine whether to use them.  (Compl.
19 | at ¶¶ 14-16 (Docket No. 1).)  She further alleges that she was
20 | inhibited in her access to informational material on defendant's
21 | website, which would have enabled her to decide whether to
22 | patronize defendant's business, because she is deaf and the
23 | videos she sought to view lacked closed captioning.  (See id. at
24 | ¶¶ 10-11, 17-18.)
25 |      Particularly in light of the Supreme Court's admonition
26 | that courts must take "a broad view of constitutional standing in
27 | civil rights cases, especially where, as under the ADA, private
28 | enforcement suits 'are the primary method of obtaining compliance

with the Act,'" see Doran, 524 F.3d at 1039 (quoting Trafficante v. Metro. Life Ins. Co., 409 U.S. 205, 209 (1972)), the court finds that plaintiff has adequately pled an injury in fact to have standing to sue under the ADA.

   B.   Motion to Dismiss under Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows for dismissal when the plaintiff's complaint fails to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). The inquiry before the court is whether, accepting the allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor, the complaint has stated "a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Although legal conclusions "can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679.

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a). "To prevail on a discrimination claim under Title III, a plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) the

defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his disability." Arizona ex rel. Goddard v. Harkins Amusement Enters., 603 F.3d 666, 670 (9th Cir. 2010).

Discrimination by a place of public accommodation under the ADA includes, inter alia, "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services," unless such steps "would fundamentally alter" the nature of the goods, services, or privileges being offered or "would result in an undue burden." 42 U.S.C. § 12182(b)(2)(A)(iii).

Department of Justice ("DOJ") regulations implementing the ADA, in turn, define "auxiliary aids and services" to include "open and closed captioning . . . ; accessible electronic and information technology; or other effective methods of making aurally delivered information available to individuals who are deaf or hard of hearing." 28 C.F.R. § 36.303(b)(1). They mandate that "[a] public accommodation shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." Id. at § 36.303(c)(1); see also 28 C.F.R. pt. 36, App. A (2010), Title III Regulations 2010 Guidance and Section-by-Section Analysis ("DOJ Title III Guidance") ("Implicit in this duty to provide auxiliary aids and services is the underlying obligation of a public accommodation to communicate effectively with customers,

clients, patients, companions, or participants who have disabilities affecting hearing, vision, or speech.").

Although the Ninth Circuit has held that a "place of public accommodation," as the term is used in Title III, refers to a "physical place," Weyer v. Twentieth Century Fox Film Corp., 198 F.3d 1104, 1114 (9th Cir. 2000), it has also held that Title III's "auxiliary aids and services" requirement can apply to a public accommodation's website. See Robles v. Domino's Pizza, LLC, 913 F.3d 898, 905 (9th Cir. 2019) (quoting Nat'l Fed'n of the Blind v. Target Corp., 452 F. Supp. 2d 946, 953 (N.D. Cal. 2006) ("The statute applies to the services *of* a place of public accommodation, not services *in* a place of public accommodation. To limit the ADA to discrimination in the provision of services occurring on the premises of a public accommodation would contradict the plain language of the statute.")); see also DOJ Title III Guidance ("Although the language of the ADA does not explicitly mention the Internet, the [DOJ] has taken the position that [T]itle III covers access to Web sites of public accommodations."); Bragdon v. Abbott, 524 U.S. 624, 646 (1998) (DOJ's administrative guidance in implementing ADA is entitled to deference).

In light of Title III's "physical place" requirement, however, courts have consistently required that plaintiffs challenging the accessibility of websites under the ADA allege a "nexus" between the website and a physical place of accommodation. See Reed v. CVS Pharmacy, Inc., CV 17-3877-MWF (SKx), 2017 WL 4457508, at *3 (C.D. Cal. Oct. 3, 2017) (to state a claim under the ADA based on a website, a plaintiff must allege

9

1  "some connection between the good or service complained of and an
2  actual physical place") (quoting Weyer, 198 F.3d at 1114); see
3  also, e.g., Robles v. Yum! Brands, Inc., 2:16-cv-08211-ODW(SS),
4  2018 WL 566781, at *3 (C.D. Cal. Jan. 24, 2018); Rios v. New York
5  & Co., Inc., 2:17-cv-04676-ODW(AGRx), 2017 WL 5564530, at *3
6  (C.D. Cal. Nov. 16, 2017); Nat'l Fed'n of the Blind, 452 F. Supp.
7  2d at 952.

8        For example, in one case in the Northern District of
9  California, the district court held that Facebook, a social
10 networking platform with an exclusively online presence, did not
11 qualify because it lacked a physical place of business customers
12 could access.  See Young v. Facebook, Inc., 790 F. Supp. 2d 1110,
13 1115-16 (N.D. Cal. 2011).  On the other hand, in Robles, the
14 Ninth Circuit held that a restaurant chain's website, which
15 corresponded to and connected customers with its physical
16 locations and offerings, did.  See Robles, 913 F.3d at 905-06.

17       In its motion to dismiss, defendant contends that in
18 pleading this nexus, an ADA plaintiff must not only aver that the
19 website containing the allegedly inaccessible features
20 corresponds to a brick-and-mortar business, but she must also
21 specifically allege she was prevented from physically accessing
22 that business's goods or services because of those features.
23 (See Mot. to Dismiss at 4-7 (Docket No. 6).)  Defendant cites
24 Robles for this proposition.  (See id. at 4-5.)

25       However, in Robles, the Ninth Circuit specifically
26 declined to hold that such a requirement exists.  See Robles, 913
27 F.3d at 905 n.6 ("We need not decide whether the ADA covers the
28 websites or apps of a physical place of public accommodation

10

1 where their inaccessibility does not impede access to the goods
2 and services of a physical location.") (emphasis added).[2]  And to
3 the extent that the decisions of other district courts in the
4 Ninth Circuit may be read to suggest that such a requirement
5 nonetheless exists,[3] this court disagrees.  Nowhere do Title III
6 or its implementing regulations state that an inaccessible
7 feature of a public accommodation must prevent an individual from
8 accessing the accommodation's good or services for the ADA's
9 protections to apply.

10      To the contrary, the language of the statute and
11 regulations sweeps more broadly, ensuring that "no individual
12 with a disability is excluded, denied services, segregated or
13 otherwise treated differently than other individuals because of
14 the absence of auxiliary aids and services," 42 U.S.C.
15 § 12182(b)(2)(a)(iii), and requiring that public accommodations
16 "furnish appropriate auxiliary aids and services where necessary
17 to ensure effective communication with individuals with
18 disabilities."  28 C.F.R. § 36.303(c)(1).  As one district court
19 stated:

---

[2] In other words, the Robles court held that allegations that inaccessible features of a public accommodation's website prevented a plaintiff from physically accessing the accommodation's goods or services are sufficient to state a claim under Title III, but it made no determination as to whether they are necessary.  See id.

[3] See Brooks v. See's Candies, Inc., 2:20-cv-01236 MCE DB, 2021 WL 3602153, at *3-4 (E.D. Cal. Aug. 13, 2021); Langer v. Pep Boys Manny Moe & Jack of Cal., 20-cv-06015-DMR, 2021 WL 148237, at *6 (N.D. Cal. Jan. 15, 2021); Strojnik v. Kapalua Land Co. LTD, 19-00077 SOM-KJM, 2019 WL 4685412, at *6 (D. Haw. Aug. 26, 2019), report and recommendation adopted sub nom. 2019 WL 4684450 (D. Haw. Sept. 25, 2019), aff'd, 801 F. App'x 531 (9th Cir. 2020).

11

> [I]t is clear that the purpose of the statute is broader than mere physical access—seeking to bar actions or omissions which impair a disabled person's "full enjoyment" of services or goods of a covered accommodation. Indeed, the statute expressly states that the denial of equal "participation" or the provision of "separate benefit[s]" are actionable under Title III.

Nat'l Fed'n of the Blind, 452 F. Supp. 2d at 954 (quoting 42 U.S.C. §§ 12182(a),(b)(1)(A)).

Plaintiff, who is completely deaf, alleges she was a prospective customer who sought to view defendant's testimonial videos to gain more information about its clinic and its scope of services but was unable to understand them because they lacked closed captioning. (Compl. at ¶¶ 1, 14-18.) In other words, defendant's website failed to provide the "auxiliary aids and services . . . necessary to ensure effective communication" with plaintiff, a disabled individual. See 28 C.F.R. § 36.303(c)(1); see also id. at § 36.303(b)(1) (defining "auxiliary aids and services" to include "closed captioning" and other accommodations designed to render "aurally delivered information available to individuals who are deaf or hard of hearing").

Moreover, testimonial videos may often prove valuable to an individual considering whether to solicit a business's services by providing information about prior customers' experiences and the benefits and detriments the viewer is likely to experience if she obtains those services herself. This is particularly true where, as here, doing so would effect a permanent change to a customer's physical appearance. Here,

however, according to plaintiff's complaint, due to defendant's failure to provide closed captioning or comparable auxiliary aids, this information was only available to prospective customers who can hear.

Accordingly, plaintiff has alleged facts which, taken as true, are sufficient to show that defendant's videos provide a non-deaf person a benefit in assessing whether to obtain its services that is unavailable to a deaf person, thereby impeding "full and equal" access to and "enjoyment of" its services for deaf people, 42 U.S.C. § 12182(a), and "treat[ing] them] differently than other individuals because of the absence of auxiliary aids and services." Id. at § 12182(b)(2)(A)(iii). Plaintiff has therefore adequately stated a claim under Title III of the ADA.

Further, defendant does not contend that taking steps to render the videos on its website accessible to plaintiff and other hearing-impaired individuals by providing closed captioning "would fundamentally alter the nature" of the goods, services, or privileges being offered or "result in an undue burden." Id.; (see Mot. to Dismiss (Docket No. 6); Opp'n to Mot. to Dismiss (Docket No. 9)). Indeed, as plaintiff plausibly alleges in her complaint, "[c]losed captioning can be provided at little cost, sometimes free or mere dollars per minute of video content." (Compl. at ¶ 33 (Docket No. 1).)

Taking these facts as true, as the court must at the motion to dismiss stage, and construing permissible inferences in plaintiff's favor, neither the fundamental-alteration or undue-burden exceptions to Title III provide a basis for granting

13

1 defendant's motion.  Accordingly, the court will deny the motion
2 to dismiss the complaint's ADA claim.
3      C.   Unruh Act Claim
4      A plaintiff may prevail under California's Unruh Act by
5 demonstrating either that (1) she has been denied access to a
6 business establishment as a result of intentional discrimination
7 or (2) an ADA violation has occurred.  See Munson v. Del Taco,
8 Inc., 46 Cal. 4th 661, 670 (2009); Cal. Civ. Code § 51(f).
9 Because an "a violation of the ADA is, per se, a violation of the
10 Unruh Act," Lentini v. Cal. Ctr. for the Arts, 370 F.3d 837, 847
11 (9th Cir. 2004), "a plaintiff who pleads a violation of the ADA
12 does not need to allege anything further in order to state a
13 claim under the Unruh Act."  Nat'l Fed'n of the Blind, 452 F.
14 Supp. 2d at 957 (citing Lentini, 370 F.3d at 847).  Because
15 plaintiff here has stated a claim under the ADA, she has done so
16 under the Unruh Act as well, and the court will deny the motion
17 to dismiss the Unruh Act claim.
18      IT IS THEREFORE ORDERED that defendant's Motion to
19 Dismiss (Docket No. 6) be, and the same hereby is, DENIED.
20
21 Dated:  September 24, 2021

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

14